[Cite as *State v. Sanders*, 2016-Ohio-7204.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 15-COA-33 |
| | : | |
| LADARRIUS MERTELL SANDERS | : | |
| AKA TOMMY BROWN | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Ashland County Court
                            of Common Pleas, Case No. 5-CRI-070



JUDGMENT:                   AFFIRMED IN PART, REVERSED IN
                            PART, VACATED IN PART AND
                            REMANDED



DATE OF JUDGMENT ENTRY:     September 30, 2016




APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

CHRISTOPHER R. TUNNELL                 CHRISTINA I. REIHELD
ASHLAND CO. PROSECUTOR                 P.O. Box 532
GARY D. BISHOP                         Danville, OH 43014
110 Cottage St., 3rd Floor
Ashland, OH 44805

*Delaney, J.*

{¶1}   Appellant Ladarrius Mertell Sanders, a.k.a. Tommy Brown, appeals from the August 31, 2015 Judgment Entry – Sentencing of the Ashland County Court of Common Pleas.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   This case arose when V.M. met a man she knew as "Tommy Brown" on the dating website Plenty of Fish.  V.M. corresponded with "Brown," met him for dinner in Mansfield, Ohio, and very shortly thereafter allowed him to move into her apartment in Ashland, Ohio.  V.M. knew "Brown" was from Detroit, had been in prison, and had at least two Facebook profiles: one as "Tommy Brown" and one as "Kwame Kilpatrick."[1]  He had two children in Detroit whom he and V.M. traveled to pick up, but V.M. was not allowed to meet the children's mother.  The couple brought "Brown's" two young children back to Ashland to live with them.

{¶3}   V.M. and "Brown" lived together in the Ashland apartment complex for several months, sometimes with "Brown's" children, but he kept only a few articles of clothing and shoes at the apartment.  V.M. became increasingly suspicious of "Brown" because he started leaving town for days at a time with little or no contact, even though V.M. provided him with a cell phone.   He was slow to return texts and calls.  One day "Brown" demanded cash and apartment keys from V.M. and she refused.  The two argued and the apartment manager was called to intervene.   The apartment manager told

---

[1] The "real" Kwame Kilpatrick is the former Michigan state senator and Detroit mayor currently incarcerated in federal prison.  The "Kwame Kilpatrick" known to V.M. is the same man known to her as "Tommy Brown."

"Brown" he had to leave and was not allowed to be in the apartment, so he packed his belongings and left.

{¶4} V.M. did not speak to "Brown" again until April 8, 2015, when "Brown" called and said he missed her; he asked her to meet him at a nearby friend's apartment so they could talk. "Brown" asked V.M. to put him on her apartment lease and V.M. decided she wanted to give him another chance. The two returned to V.M.'s apartment. On the way, they passed April Walker and Richard Clime on the apartment building steps. Walker and Clime were familiar with V.M. and "Brown," knowing the pair had lived together for several months and having seen them around the complex with "Brown's" children. As they entered the building, "Brown" asked the neighbors, "Did you miss me?"

{¶5} V.M. and "Brown" went inside the apartment and an argument ensued when "Brown" accused V.M. of having another man in the house. V.M. said a friend had come over and "Brown" responded by grabbing her by the neck and choking her. V.M. could not breathe. "Brown" knocked over a coffee table and candle wax spilled on the floor.

{¶6} In the meantime, Walker and Clime heard voices getting louder inside V.M.'s apartment; they heard a crash and a scream. The two knocked on V.M.'s door and Clime told "Brown" to get out. "Brown" left without further incident. Walker and Clime observed the turned-over coffee table and spilled candle wax on the floor. V.M. told the neighbors "Brown" had choked her.

{¶7} At first V.M. could not find her cell phone but soon located it and called police. V.M.'s phone stopped working later that night, purportedly because candle wax melted onto the phone. Police photographed V.M.'s injuries and the overturned coffee table in the apartment. The responding officer called "Brown's" cell phone to attempt to

locate him.  At first, no one answered.  A male answered the second call and said "Don't call this number again."  A third call was unanswered.  Police were not able to locate "Brown" that night.

{¶8}   As described infra, "Brown" was found in Mansfield about a week later and arrested; his cell phone was seized as evidence.  Analysis of "Brown's" cell phone pursuant to a search warrant showed the following text exchanges on April 8, 2015 and April 9, 2015 in the wake of the domestic violence incident.  Sender/recipient "Vanessa-Ashland" and "Baby Mom" are the contact names as they appeared in "Brown's" cell phone.  *Sic* throughout.

| DATE | TIME | SENT OR RECEIVED | SENDER OR RECIPIENT | TEXT SENT | TEXT RECEIVED |
|---|---|---|---|---|---|
| April 8, 2015 | 10:22 p.m. | Received | Vanessa – Ashland | | WYA |
| " | 10:48 p.m. | Received | Vanessa–Ashland | | WYD |
| " | 10:53 p.m. | Received | Vanessa–Ashland | | Put your hands on me, I will call, now you did it |
| " | 10:55 p.m. | Sent | Vanessa – Ashland | You fuck, dat, nigger, fuck you | |
| " | 11:00 p.m. | Received | Vanessa – Ashland | | I have marks on me, kiss your ass goodbye |
| " | 11:03 p.m. | Sent | Vanessa – Ashland | Stop texting me, ho | |
| " | 11:04 p.m. | Sent | Vanessa – Ashland | You are a true ho, okay, talking about a bitch, I am on my way home | |

| | | | | | |
|---|---|---|---|---|---|
| " | 11:17 p.m. | Sent | Vanessa – Ashland | Bitch, ain't shit but a ho disrespect me, you are lunch, I hope you know | |
| " | 11:55 p.m. | Sent | Vanessa – Ashland | My people will be to see you, LMAO, you better move [emojis] | |
| April 9, 2015 | 2:13 a.m. | Sent | Vanessa – Ashland | You dumb bitch | |
| " | 2:15 – 2:23 a.m. | Sent | Vanessa – Ashland | I am not dumb, tell dat fag, don't call my phone, bitch I am halfway to Detroit, so keep that shit off my phone | |
| " | | Sent | Baby Mom | The police, I will die before I go back to jail. FR, I believe that I am good, I got away | |
| " | | Sent | Baby Mom | I'm about to change my number cuz the police keep calling me | |
| " | | Sent | Baby Mom | The people that I | |

| | | | | fucked up were all zeroes and come to find out, they set me up. The police was waiting on me the reason that I got flicked and lost my shit, and fuck em, they lucky that I wasn't strapped | |
|---|---|---|---|---|---|

{¶9}   V.M. testified she never received the texts beginning at timestamp 11:17 p.m. on April 8 because her phone stopped working.

{¶10} V.M. went to Samaritan Hospital and reported she had been choked.  The E.R. nurse and physician staff noted injuries to her neck including contusions and abrasions.

{¶11} On April 15, 2015, the Ashland Police Department contacted the Mansfield Police Department to advise "Brown" was believed to be in their jurisdiction.  A Mansfield officer made contact with "Brown," who advised his name was "Tommy Brown" and gave a date of birth but said he had no I.D. and couldn't remember his social security number.

{¶12} "Brown" was booked into the Ashland County jail as "Tommy Brown," the only name he ever provided to investigators.  By calling numbers in "Brown's" cell phone and cross-referencing Facebook profiles including those of "Tommy Brown" and "Kwame

Kilpatrick," "Brown" was eventually identified as appellant Ladarrius Sanders. Appellant has two prior convictions in Michigan for domestic violence and a Detroit detective testified appellant had active warrants for his arrest.

{¶13} At trial, appellant presented an alibi defense, arguing he was not present at the time the domestic violence offense allegedly occurred. Shaneese Ray testified she drove appellant to an unknown address in Mansfield on the night of the domestic violence offense, and Latia Porter testified appellant spent the night with her.

{¶14} Appellant was charged by indictment with one count of domestic violence, a felony of the fourth degree pursuant to R.C. 2919.25(A) [Count I]; one count of intimidation of a witness or victim, a felony of the third degree pursuant to R.C. 2921.04(B)(1) [Count II]; one count of falsification, a misdemeanor of the first degree pursuant to R.C. 2921.31(A)(3) [Count III]; and one count of tampering with records, a felony of the third degree pursuant to R.C. 2913.42(A)(1) [Count IV].

{¶15} Appellant entered pleas of not guilty and filed a notice of alibi pursuant to R.C. 2945.58 and Crim.R. 12.1.

{¶16} The case proceeded to trial by jury. The record does not contain any motion for acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence, although appellant's trial counsel stated he "renewed" the motion for acquittal as to Counts II, III, and IV at the close of all of the evidence. The motion was overruled. Appellant also objected to the verdict form as to Count III, intimidation of a crime victim, arguing it did not comply with R.C. 2945.75. The trial court disagreed and found the verdict form read in conjunction with Count III of the indictment complied with *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891.

{¶17}  Appellant was found guilty as charged.

{¶18} On August 31, 2015, appellant filed a sentencing memorandum arguing he should be sentenced upon the lowest level of offense of intimidation, i.e. a misdemeanor of the first degree, because the verdict form did not contain the element of threat of force necessary to elevate the offense to a felony of the third degree.  The trial court disagreed and sentenced appellant upon Count III as a felony of the third degree.

{¶19} Appellant was referred for a pre-sentence investigation which has been filed under seal and is part of the appellate record.

{¶20} On August 31, 2015, the trial court sentenced appellant to a prison term of 18 months upon Count I, 9 months upon Count II, 60 days upon Count III, and 30 months upon Count IV.  The prison terms for Counts II and III are to be served concurrently with the terms for Counts I and IV, which are to be served consecutively.   Appellant's aggregate prison term is 48 months.

{¶21} Appellant now appeals from the trial court's judgment entries of sentence and conviction of August 31, 2015.

{¶22} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I.   TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF MR. SANDERS' UNLAWFUL, WARRANTLESS ARREST, AND MR. SANDERS WAS PREJUDICED BY THAT ACT AS SUCH A MOTION WOULD HAVE SUPPRESSED HIS STATEMENTS TO POLICE CONCERNING HIS IDENTITY AND THE BOOKING RECORDS AT THE JAIL

WHICH WERE THE BASIS OF HIS FALSIFICATION AND TAMPERING WITH EVIDENCE CONVICTIONS."

{¶24} "II.  MR. SANDERS' CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶25} "III. THE TRIAL COURT ERRED BY SENTENCING MR. SANDERS TO A FELONY LEVEL OFFENSE OF INTIMIDATION OF A VICTIM WHEN THE JURY VERDICT FORM FAILED TO SPECIFY THE LEVEL OF OFFENSE OR THE ADDITIONAL FACTORS WHICH ELEVATE THE ACTUAL OFFENSE TO A FELONY."

{¶26} "IV.  THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCE[S] UPON MR. SANDERS FOR THE TAMPERING WITH RECORDS CONVICTION."

## ANALYSIS

### I.

{¶27} In his first assignment of error, appellant argues he received ineffective assistance of trial counsel because counsel did not file a motion to suppress evidence arising from his allegedly unlawful arrest.  We disagree.

{¶28} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. See, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158

(1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690.

{¶29} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶30} Appellant argues trial counsel should have filed a motion to suppress evidence stemming from his "unconstitutional, warrantless arrest." Failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Boyd*, 5th Dist. Richland No. 12CA23, 2013-Ohio-1333, ¶ 24, citing *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000–Ohio–0448. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle,* 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam,* 5th Dist. No. 06–CA–88, 2007–Ohio–3009, at ¶ 86. Furthermore, "[w]here the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." *State v. Drummond,* 111 Ohio St.3d 14, 41, 2006–Ohio–5084, 854 N.E.2d 1038, quoting *State v. Gibson,* 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). See also, *State v. Suiste,* 5th Dist. No.2007 CA 00252, 2008–Ohio–5012.

{¶31} Furthermore, in order to satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that there was a reasonable probability that the motion to suppress would have been granted. See, e.g., *State v. Fair,* 2nd Dist. No. 24120, 2011–Ohio–3330, ¶ 27. See also *Kimmelman* at 390–391. Trial counsel's decision not to file a motion to suppress may be a matter of trial strategy, including counsel's reasonable assessment of whether such a motion is likely to succeed and recognition that filing a motion to suppress has risks. *Madrigal,* 87 Ohio St.3d at 389.

{¶32} In the instant case, based on the evidence presented at trial, appellant cannot show trial counsel's failure to file a motion to suppress constitutes a deficiency. We disagree with appellant's assertion he was "picked [ ] up without a warrant * * *." (Brief, 8). Our review of the record reveals conflicting evidence of this assertion. The Ashland Police Department advised the Mansfield Police Department they had a warrant for appellant and believed him to be in Mansfield's jurisdiction. (T. 198). The Mansfield officer testified dispatch advised her of the existence of a warrant. (T. 204). From the inception of the domestic violence case, Ashland police suspected "Tommy Brown" was not appellant's true identity and were investigating to discover his genuine social security number and date of birth; appellant was eventually identified as "Ladarrius Sanders." A Detroit detective testified outstanding warrants existed for appellant's arrest as Sanders. (T. 58). In addition, the record is not sufficiently developed as to whether V.M. completed a domestic violence affidavit the night of the offense, which would have constituted sufficient and reasonable grounds to support appellant's warrantless arrest for domestic violence. R.C. 2935.03(B)(3)(a)(i); *State v. Christian*, 7th Dist. Mahoning No. 02 CA 170, 2005-Ohio-1440, ¶ 22.

{¶33} We conclude we cannot speculate whether the record at a suppression hearing would support a finding of unlawful arrest in the instant case. *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, ¶ 41. We decline to evaluate this fact-specific issue on the trial record alone because evidence relevant to suppression was not developed; such is the dilemma of most appellants attempting to establish ineffective assistance for failing to file a motion to suppress. Id. In the case of *State v. Parkinson,* Stark App. No.1995CA00208, unreported (May 20, 1996) at *3, we observed that when counsel fails to file a motion to suppress, the record developed at trial is generally inadequate to determine the validity of the suppression motion. This reasoning is applicable here because based on the record, it is unclear whether a suppression motion would have been successful. *State v. Culbertson,* 5th Dist. Stark No.2000CA00129, 2000 WL 1701230, *4 (Nov. 13, 2000) See also, *State v. Hoover,* 5th Dist. Stark No.2001CA00138, 2001–Ohio–1964; *State v. Dowding,* 5th Dist. Stark No.2014 CA 00131, 2015–Ohio–1362, ¶ 53, citing *State v. Jackson,* 5th Dist. Stark No.2005CA00198, 2006–Ohio–4453, ¶ 27.

{¶34} We also must presume a properly licensed attorney executes his or her duties in an ethical and competent manner. See *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Under the circumstances presented, we are not inclined to overcome this presumption with the limited information in the appellate record before us.

{¶35} Appellant's first assignment of error is overruled.

II.

{¶36} In his second assignment of error, appellant argues that each of his convictions are against the manifest weight of the evidence. We disagree in part and agree in part.

{¶37} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id.

{¶38} A manifest-weight challenge "concerns 'the inclination of the *greater amount of credible evidence * * ** to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Montgomery*, Slip Opinion No. 2016-Ohio-5487, ---N.E.3d---, ¶ 75 (Ohio), citing *Thompkins,* supra, 78 Ohio St.3d at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In addressing a manifest-weight argument, we are able to consider the credibility of the witnesses. *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 13, citing *State v. Cattledge,* 10th Dist. No. 10AP–105, 2010–Ohio–4953, ¶ 6.

{¶39} Appellant argues each of his convictions is against the manifest weight of the evidence thus we will examine each in turn.

*Count I: Domestic Violence*

{¶40} In Count I, appellant was convicted of domestic violence as a felony of the fourth degree pursuant to R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant acknowledges he lived with V.M. as a family or household member, but argues the jury lost its way because some details of appellee's witnesses' testimony about the incident differed, and his own witnesses said he was not in Ashland at the time of the crime.

{¶41} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor*, 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, ¶ 10, citing *State v. Craig*, 10th Dist. Franklin No. 99AP–739 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. Id. Our review of the entire record reveals no significant inconsistencies or other conflicts in appellee's evidence that would demonstrate a lack of credibility of appellee's witnesses. As to the essential facts of the domestic violence offense, V.M.'s testimony was corroborated by the testimony of other witnesses, including neighbors, medical personnel, and police. V.M.'s account was also corroborated by the physical evidence of the injuries to her neck and the disarray in the apartment. Appellant thus has not shown that "a miscarriage of justice" occurred or that the jury "lost its way" when it found him guilty of domestic violence in Count I.

*Count II: Intimidation*

{¶42} In Count II, appellant was convicted of one count of one count of intimidation of a witness or victim, a felony of the third degree pursuant to R.C. 2921.04(B)(1), which states: "No person, knowingly and by force or by unlawful threat of harm to any person * * * or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder * * * [t]he victim of a crime or delinquent act in the filing or prosecution of criminal charges * * *."  Appellant argues the evidence does not establish beyond a reasonable doubt that he personally sent the threatening text messages from his phone, or that V.M. received them, and there is no evidence of the "venue" of the text messages.

{¶43} We find the jury did not lose its way in finding appellant sent the texts. Based upon the timing of the texting back and forth between appellant and V.M., the jury could conclude he sent the threatening texts within minutes of V.M. threatening to call police about the domestic violence.  V.M.'s acknowledgement she did not receive the threatening texts is immaterial because there is no requirement that the victim feel intimidated or even know of appellant's attempt to intimidate her to commit the crime of intimidation. *State v. Williams*, 8th Dist. Cuyahoga No. 94261, 2011-Ohio-591, ¶ 14, citing *State v. Brodie,* 2nd Dist. Montgomery No. 21905, 2008–Ohio–196, ¶ 10.

{¶44} Finally, pursuant to the venue statute, the jury could reasonably conclude the intimidation offense was committed within Ashland County.  R.C. 2901.12(H) permits appellant to be properly tried in any jurisdiction in which any element of the offenses of his course of criminal conduct occurred.[2]  Further, appellant assaulted V.M. and

---

[2] R.C. 2901.12(H) states:

threatened her via text as he fled; whether he texted her while still in Ashland County or whether he had reached Richland County is immaterial because R.C. 2901.12(G) states "[w]hen it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions."

{¶45} Appellant's conviction upon Count II, intimidation, is not against the manifest weight of the evidence.

*Count III: Falsification*

{¶46} In Count III, appellant was convicted upon one count of falsification, a misdemeanor of the first degree pursuant to R.C. 2921.31(A)(3), which states: "No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when * * * [t]he statement is made with purpose to mislead a public official in performing the public official's official function." The term "statement" in R.C. 2921.13 has been held to mean "an assertion or a declaration of matters of fact."

---

When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct: (1) The offenses involved the same victim, or victims of the same type or from the same group. (2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another. (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective. (4) The offenses were committed in furtherance of the same conspiracy. (5) The offenses involved the same or a similar modus operandi. (6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

*State v. Coyne*, 69 Ohio App.2d 63, 64, 430 N.E.2d 473 (1st Dist.1980), citing Black's Law Dictionary (5 Ed. 1979), 1263. Appellant argues his conviction is against the manifest weight of the evidence because there is no evidence he made any statement with purpose to mislead Captain Lay on April 15, 2015 or any other date.

{¶47} We have combed the record for evidence in support of appellant's falsification conviction, to no avail. The record is devoid of a request for a bill of particulars and neither party cites a bill in their argument; we thus look to the indictment to determine the conduct alleged to constitute the offense of falsification. The language of the indictment states, " * * * [O]n or about April 15, 2015" appellant made a false statement with purpose to mislead Captain Lay.

{¶48} Appellant first takes issue with the date of the offense. "Ordinarily the precise dates and times are not essential elements of the offense, and a certain degree of inexactitude of averments, where it relates to matters other than elements of the offense, is not fatal to appellee." *State v. Adams*, 5th Dist. Licking No. 02-CA-00043, 2002-Ohio-5953, ¶ 8, citing *State v. Sellards*, 17 Ohio St.3d 169, 478 N.E.2d 781 (1985). Appellee is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. Id.

{¶49} More significantly, we find no evidence of a false statement made by appellant to Capt. Lay on April 15 or any other date during the investigation. Appellant's use of aliases came up throughout the investigation, and Lay interacted with appellant during the investigation, but there is no evidence of any specific false statement made by appellant to Lay.

{¶50} Manifest weight is a question of fact. *Thompkins* at 387. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins,* supra, 78 Ohio St.3d 380 at 387. In this case, we are unable to find credible evidence offered to support the allegation that appellant affirmatively made a false statement to Lay. "A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390, 678 N.E.2d 541 (Cook, J., concurring). We essentially find insufficient evidence to support appellant's conviction upon Count III. Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. Braxton,* 10th Dist. Franklin No. 04AP–725, 2005–Ohio–2198, ¶ 15, citing *State v. Roberts*, 9th Dist. **** No. 96CA006462 (Sept. 17, 1997). "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id*.*

{¶51} Appellant framed this argument as a manifest-weight claim, but we have thoroughly reviewed the record and find no evidence of an affirmative false statement made by appellant to Captain Lay at any point in his investigation. Lay testified he started his investigation with the assumption "Tommy Brown" was not appellant's real name because the name did not correspond with any of the dates of birth he was given. When Mansfield police contacted him on April 15, 2015 to advise they found appellant, Lay met Mansfield police at the county line, "receiv[ed]" appellant from Mansfield's custody, and collected appellant's cell phone. Lay testified appellant "did not cooperate in the efforts

to try to identify him" and Lay eventually learned his identity by calling numbers on the cell phone and cross-referencing Facebook pages. Lay did not testify, and we are unable to find any evidence, that appellant ever affirmatively told him his name was "Tommy Brown."

{¶52} The effect of our finding upon Count III essentially results in a mistrial upon that count alone. The reversal simply affords the defendant a second opportunity to seek a favorable judgment. *State v. Thompkins*, 78 Ohio St.3d 380, 388, 1997-Ohio-52, 678 N.E.2d 541, 547 (1997). Reversing a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, requires unanimous concurrence of all three judges on the court of appeals panel reviewing the case. *State v. Thompkins*, 78 Ohio St.3d 380, 389, 1997-Ohio-52, 678 N.E.2d 541, 548 (1997). As the "thirteenth juror," our decision effectively results in a mistrial upon Count III.

{¶53} We unanimously find appellant's conviction upon Count III is against the manifest weight of the evidence. Appellant's conviction upon the count of falsification is therefore reversed and the matter is remanded to the trial court for further proceedings.

*Count IV: Tampering with Records*

{¶54} In Count IV, appellant was convicted of one count of tampering with records, a felony of the third degree pursuant to R.C. 2913.42(A)(1) which states: "No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following: Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record." Appellant argues his conviction is against the manifest weight of the evidence because he only "failed to correct" the booking records in the name of Tommy Brown and

"[h]e did not gain anything by continuing to use his alias," thereby not gaining any benefit which demonstrate a purpose to defraud. Contrary to appellant's assertions, the booking officer testified appellant stated his name was "Tommy Brown" and signed various pieces of paperwork including a fingerprint card, booking form, "PREA form," and suicide assessment form each as "Tommy Brown." (T. 261-272.)

{¶55} We also disagree with appellant's argument that he gained no benefit from his deception. R.C. 2913.01(B) defines "defraud" as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." Appellant did benefit by use of the alias during booking: his true identity as Ladarrius Sanders, and his past history of domestic violence convictions and warrants, remained undiscovered.

{¶56} Appellant's conviction upon County IV is not against the manifest weight of the evidence.

{¶57} Appellant's second assignment of error is therefore sustained as to Count III and overruled as to Counts I, II, and IV.

III.

{¶58} In his third assignment of error, appellant argues the trial court was required to convict appellant upon the lowest level offense of intimidation because the verdict form omitted the degree of the offense and additional elements making the offense one of a more serious degree. We agree.

{¶59} This case requires the application of conflicting authority from the Ohio Supreme Court as to the application of R.C. 2945.72(A)(2), which states: "When the presence of one or more additional elements makes an offense one of more serious

degree:  [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

{¶60} In the instant case, the verdict form for Count II, intimidation, states in pertinent part, "We, the jury * * * find [appellant] Guilty of the offense of Intimidation of a Victim in a Criminal Case, as stated in Count Two of the Indictment. * * * *."

{¶61} The indictment dated May 4, 2015 references "INTIMIDATION OF A VICTIM IN A CRIMINAL CASE (Section 2921.04(B)(1) of the Ohio Revised Code), a felony of the third degree" (emphasis in original) and states in pertinent part:

> In that on or about April 8, 2015 in Ashland County, Ohio, [appellant], aka: Tommy Brown, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, attempted to influence, intimidate, or hinder the victim of a crime, to wit: Vanessa Messner, in the filing or prosecution of criminal charges, in violation of Ohio Revised Code Section 2921.04(B)(1), INTIMIDATION OF A VICTIM IN A CRIMINAL CASE, a felony of the third degree.  (Emphasis in original.)

{¶62} The verdict form, therefore, does not contain the degree of the offense of which appellant is convicted, nor a statement that an aggravating element has been found to justify convicting appellant of a greater degree of a criminal offense.

{¶63} We note appellant objected to the verdict form at trial, which removes this case from a plain-error analysis.  The trial court determined *State v. Eafford*, 132 Ohio

St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, applied, therefore sustaining appellant's conviction upon the third-degree felony, but we disagree. We turn to a review of the relevant authority.

*Pelfrey*

{¶64} Appellant argues the verdict form on Count II does not comply with *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, syllabus. In *Pelfrey*, the Ohio Supreme Court considered the plain language of R.C. 2945.75 and held a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense. Id. An insufficient verdict form results in a finding of guilty on the least degree of the offense charged pursuant to R.C. 2945.75(A)(2). Id. See also, *State v. Nethers,* 5th Dist. Licking No. 07 CA 78, 2008–Ohio–2679, ¶ 51; *State v. Miller*, 5th Dist. Stark No. 2011-CA-00074, 2011-Ohio-3039, ¶ 17.

*Sessler*

{¶65} In 2008, the Court applied *Pelfrey* in the context of the same statute at issue here: intimidation of a victim or witness, R.C. 2921.04. In *State v. Sessler*, the defendant was convicted of two counts of intimidation in violation of R.C. 2921.04(B). 3rd Dist. Crawford No. 3-06-23, 2007-Ohio-4931, ¶ 13, aff'd, 119 Ohio St.3d 9, 2008-Ohio-3180, 891 N.E.2d 318. At that time, the version of R.C. 2921.04 in effect stated:

> (A) No person shall knowingly attempt to intimidate or hinder
>
> the victim of a crime in the filing or prosecution of criminal charges or

a witness involved in a criminal action or proceeding in the discharge

of the duties of the witness.

(B) No person, knowingly and by force or by unlawful threat of

harm to any person or property, shall attempt to influence, intimidate,

or hinder the victim of a crime in the filing or prosecution of criminal

charges or an attorney or witness involved in a criminal action or

proceeding in the discharge of the duties of the attorney or witness.

{¶66} The statute was amended in 2012 to remove reference to "involved in a criminal proceeding" because case law had established a defendant could not be convicted of intimidation for threats made after the original crime but before a criminal "action or proceeding" commenced. The statute was similar to the present version, however, in that a violation of subsection (A) was a misdemeanor of the first degree and a violation of subsection (B) was a felony of the third degree. R.C. 2921.04(D). In both versions, the difference between the two sections concerns whether the intimidation was accomplished through the use of force or unlawful threat of harm to any person or property. In the absence of force or threat of harm, a defendant can only be found guilty of the misdemeanor.

{¶67} Sessler was found guilty of a felony violation of the statute even though the verdict form did not specify the degree of the offense, did not mention the statutory section upon which the offense was based, and did not specifically refer to the use of force or threat of harm in the verdict form. Based upon *Pelfrey,* the Third District Court of Appeals held Sessler could be found guilty only of the least offense, a first-degree misdemeanor pursuant to R.C. 2921.04(A):

The only difference between divisions A and B of R.C. 2921.04 as it applies to this case is the question whether the defendant "knowingly and by force or by unlawful threat of harm to any person or property" attempted to intimidate the victim. If there is no force or threat of harm, the defendant may be found guilty under R.C. 2921.04(A), which is a first degree misdemeanor. R.C. 2921.04(D). If there is force or the threat of harm, the defendant may be found guilty of a third degree felony. R .C. 2929.04(D). This court notes that Sessler was properly charged, the jury instructions specified the correct offense and degree, and the verdict form incorporated by reference the indictment. However, the verdict form does not specify the degree of the offense or even statutory section upon which the offense is based and does not contain any reference to the use of force or threat of harm. The form, therefore, does not permit a determination as to which degree of offense Sessler is guilty of committing. Being obligated to follow the rulings of the Ohio Supreme Court, we must, pursuant to R .C. 2945.75(A)(2) and the holding of the Ohio Supreme Court in Pelfrey, hold that as to each count of intimidation, the jury found Sessler guilty of the least offense, which is intimidation under R.C. 2921.04(A), a first degree misdemeanor.

> *State v. Sessler*, 3rd Dist. Crawford No. 3-06-23, 2007-Ohio-
> 4931, ¶ 13 [*Sessler I*], aff'd, 119 Ohio St.3d 9, 2008-Ohio-
> 3180, 891 N.E.2d 318.

{¶68} The Ohio Supreme Court accepted review of *Sessler I* with the certified question "Is the holding in *State v. Pelfrey,* 112 Ohio St.3d 422, applicable to charging statutes that contain separate sub-parts with distinct offense levels?" *State v. Sessler*, 116 Ohio St.3d 1505, 2008-Ohio-381, 880 N.E.2d 481. The Court affirmed *Sessler I* without opinion, answering "the certified question [ ] in the affirmative, and [affirming] the judgment of the court of appeals * * * on the authority of *State v. Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735." *State v. Sessler*, 119 Ohio St.3d 9, 2008-Ohio-3180, 891 N.E.2d 318, ¶ 1.

{¶69} As of 2008, therefore, *Pelfrey* was applicable to prosecutions under R.C. 2921.04 in that the verdict form must specify the degree of the offense, the statutory section upon which the offense is based, and must contain reference to the use of force or threat of harm to convict a defendant of the felony-level offense.

*Eafford*

{¶70} Appellee argues, though, we should agree with the trial court and adopt the Court majority's rationale in *State v. Eafford,* 132 Ohio St.3d 159, 970 N.E.2d 891, 2012–Ohio–2224, in which the Court revisited the effect of not complying with R.C. 2945.75(A)(2). Eafford was charged in the indictment with possession of cocaine; testimony at trial established Eafford possessed cocaine; and the jury returned its verdict reflecting a finding of guilty "as charged in Count Two of the indictment." The verdict form referenced "possession of drugs" and R.C. 2925.11(A), but did not include factors which

would ostensibly have elevated the offense to a fifth-degree felony. The Eighth District Court of Appeals found the conviction should be reduced to the lowest degree of the offense charged, vacated the sentence, and remanded the matter for resentencing.

{¶71} On appeal, the Court reversed the court of appeals under a plain-error analysis. *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶ 19. The majority reviewed the totality of the record and observed that the indictment, the evidence presented at trial, and the jury instructions all referred to "cocaine." Id. at ¶ 17. The failure to include either the degree of the offense or a finding that the drug involved was cocaine in the verdict form did not constitute plain error. Id. at ¶ 18. The majority reasoned that even if the trial court complied with R.C. 2945.75(A)(2) the outcome of the trial would not have been different. Id.

{¶72} The puzzling effect of this line of cases arises in part because the *Eafford* majority does not mention *Pelfrey* and its decision is inconsistent with *Pelfrey.* In both cases (unlike the case sub judice) the defendants did not object to the verdict forms. Nevertheless, in *Pelfrey,* the Court stated that the requirement of R.C. 2945.75(A)(2) "cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form." *Pelfrey,* 112 Ohio St.3d 422, 860 N.E.2d 735, 2007–Ohio–256, at ¶ 14.

{¶73} Conversely, in *Eafford,* the Court determined that additional circumstances as enumerated in *Pelfrey* can save a conviction from being reduced to the lowest degree

of the offense charged even when the verdict form does not include either the degree of the offense or a finding concerning the aggravating element. *Eafford,* 132 Ohio St.3d 159, 970 N.E.2d 891, 2012–Ohio–2224, at ¶ 17–18.

{¶74} Other appellate courts have analyzed the conflict between *Pelfrey and Eafford* and "[i]n light of *Eafford's* silence and [the] strict interpretation of R.C. 2945.75(A)(2) as required by R.C. 2901.04(A) and *Pelfrey,* we find that *Pelfrey* controls the disposition of this matter." *State v. Gregory*, 3rd Dist. Hardin No. 6-12-02, 2013-Ohio-853, ¶ 18, citing *State v. Schwable,* 3d Dist. No. 7–09–03, 2009–Ohio–6523; see also, *State v. Barnette*, 7th Dist. No. 13 MA 183, 2014-Ohio-5405, 26 N.E.3d 259; *State v. Wilson,* 9th Dist. No. 12CA010263, 2014-Ohio-3182, 2014 WL 3565408; *State v. Duncan*, 3rd Dist. Logan No. 8-12-15, 2014-Ohio-2720, ¶ 12, appeal not allowed*,* 141 Ohio St.3d 1473, 2015-Ohio-554, 25 N.E.3d 1080.

*McDonald*

{¶75} Appellee does not address the effect of the Court's most recent pronouncement reiterating its holding in *Pelfrey* that "in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, *the verdict form itself* is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." (Emphasis added.) *State v. McDonald*, 137 Ohio St.3d 517, 522, 2013-Ohio-5042, 1 N.E.3d 374, 379, ¶ 18 (without citation to *Eafford,* 132 Ohio St.3d 159, 72012-Ohio-2224, 970 N.E.2d 891).

{¶76} *McDonald* does not alleviate the confusion because it does not reference *Eafford.*

{¶77} Nevertheless, *McDonald* unequivocally holds that to comply with R.C. 2945.75, the signed verdict form returned by the jury must have included either the degree of the offense of which a defendant was convicted or a statement that an aggravating element had been found to justify convicting him of greater degrees of the offenses. See *McDonald* at ¶ 17, quoting *Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, at ¶ 14. The remedy for failure to include this language in the verdict form is "straightforward." *McDonald* at ¶ 14. Under R.C. 2945.75(A)(2), the defendant may only be convicted of the least degree of the offense charged. See *McDonald* at ¶ 17.

{¶78} The outcome in *McDonald* is obviously at odds with that in *Eafford,* in which the Court considered the indictment, evidence, and jury instructions as well as the verdict. The most recent pronouncement of the Supreme Court remains that nothing outside of the verdict form should be considered in reaching a conclusion as to whether the verdict form is sufficient to support a conviction for anything greater than an offense of the least degree. *State v. Duncan*, 3rd Dist. Logan No. 8-12-15, 2014-Ohio-2720, ¶ 10, *appeal not allowed,* 141 Ohio St.3d 1473, 2015-Ohio-554, 25 N.E.3d 1080, ¶ 10 (2015), citing *McDonald* at ¶ 19.

*Appellant is convicted of misdemeanor intimidation*

{¶79} We note the anomaly of *Eafford*, but are required to strictly interpret R.C. 2945.75(A)(2) pursuant to R.C. 2901.04(A) which requires that statutory penalties are strictly construed against appellee and liberally construed in favor of the accused.  In the instant case, we follow *Pelfrey, Sessler,* and *McDonald* in finding "the verdict form itself

is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, at ¶ 14; *McDonald,* 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, at ¶ 17. Here, the verdict form does not comply with R.C. 2945.72(A)(2).

{¶80} Appellant's third assignment of error is sustained; his sentence for intimidation as a third-degree felony is vacated; and the matter is remanded to the trial court. Upon remand the trial court is instructed to enter a judgment convicting appellant of intimidation as a first-degree misdemeanor and to sentence appellant accordingly.

IV.

{¶81} In his fourth assignment of error, appellant argues the trial court erred by imposing a consecutive sentence upon appellant's conviction for tampering with records (Count IV). We disagree.

{¶82} R.C. 2929.14(C)(4) provides for the imposition of consecutive sentences as follows:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶83} The trial court stated on the record during the sentencing hearing: "I am finding that consecutive service of the sentences is necessary to protect the public from future crime based upon your criminal history, particularly with regard to the Domestic Violence related offenses, and I am further finding that consecutive sentencing are not disproportionate to the seriousness and your conducts and the danger that you pose to the public (*sic*). And I am further finding that your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime." (T. Sentencing, 12-13).

{¶84} In the sentencing entry, the court found that consecutive sentences were necessary to protect the public from future crime, are not disproportionate to the seriousness of appellant's conduct and due to appellant's history of criminal conduct, consecutive sentences are necessary to protect the public.

{¶85} Appellant argues the conduct alleged in Count IV does not warrant a consecutive sentence, especially in light of the seriousness of the other offenses upon which he received concurrent sentences. Upon our review of the record, sentencing hearing and the presentence investigation report filed under seal, we find the record supports the imposition of consecutive sentences.

{¶86} Appellant's fourth assignment of error is overruled.

## CONCLUSION

{¶87} Appellant's first and fourth assignments of error are overruled. His second assignment of error is sustained in part and overruled in part. His third assignment of error is sustained. The judgment of the Ashland County Court of Common Pleas is affirmed in part, reversed in part, vacated in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

By: Delaney, J. and

Farmer, P.J., dissents.

Hoffman, J., concurs separately

HON. PATRICIA A. DELANEY

HON. SHEILA G. FARMER

HON. WILLIAM B. HOFFMAN

*Hoffman, J., concurring*

{¶88} I concur in the majority's decision to overrule Appellant's first assignment of error.

{¶89} To the extent Appellant argues his arrest was illegal under R.C. 2935.03, I find such does not rise to the level of a constitutional violation. A violation of that statute does not trigger exclusion of Appellant's statements or evidence derived as a result of his "illegal" arrest.[1]

{¶90} With respect to Appellant's assertion his arrest was unlawful under the Fourth Amendment to the United States Constitution, I find the record demonstrates there was probable cause to arrest Appellant at the time of his seizure. Therefore, no constitutional violation occurred.

{¶91} I concur in the majority's analysis and disposition of Appellant's second, third and fourth assignments of error.

_____
HON. WILLIAM B. HOFFMAN

---

[1] The state of Ohio conceded in its brief the existence of outstanding warrants from Michigan were not known by the Ashland Police at the time of Appellant's arrest. (Appellee Brief at p. 3, citing Tr. at 54-65, 235).

Although the majority cites conflicting evidence as to whether Appellant was picked up without a warrant, Appellee does not dispute the lack of a warrant in its reply brief. In fact, Appellee concedes Richland County Officer Eichinger arrested Appellant under the "mistaken" belief an arrest warrant had been issued. (Appellee Brief at p. 3, citing Tr. at 198-120).

Instead, Appellee asserts Appellant's arrest was legal pursuant to R.C. 2935.03(D)(1), under what is commonly referred to as the "hot pursuit" exception. Appellee asserts the eight day delay between Appellant's crime and his arrest does not constitute an unreasonable delay. I would reject such argument.

*Farmer, P.J., dissents*

{¶92} I respectfully dissent in the majority's analysis in Assignment of Error III. Although the guilty verdict found on the intimidation count does not contain the "degree" of the offense, the verdict form does include "as stated in Count Two of the Indictment."

{¶93} The indictment includes the degree of the offense, and I would adhere to the Supreme Court of Ohio's decision in *State v. Eafford,* 132 Ohio St.3d 159, 2012-Ohio-2224, as opposed to *State v. McDonald,* 137 Ohio St.3d 517, 2013-Ohio-5042.

{¶94} I would deny Assignment of Error III.  As for Assignments of Error I, II, and IV, I would concur with the majority's analysis.


_____
HON. SHEILA G. FARMER