[Cite as *State v. Beavogui*, 2018-Ohio-2432.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-17-009

      Appellee                               Trial Court No. 2016 CR 0399

v.

Francois Zeze Beavogui                **DECISION AND JUDGMENT**

      Appellant                              Decided:  June 22, 2018

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, Francois Zeze Beavogui, appeals the February 2, 2017 judgment of the Wood County Court of Common Pleas.  For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} On August 9, 2016, Ohio State Highway Patrol Sergeant Stacy Arnold and border patrol agents Chris Damshen and Thomas Payne were patrolling a stretch of the Ohio turnpike in Sergeant Arnold's cruiser. They were parked at a crossover in Wood County, Ohio, when they observed a Kia Optima traveling eastbound in the middle lane, noticeably below the speed limit.

{¶ 3} Sergeant Arnold saw that the driver was sitting at a straight 90-degree angle while his seat was slightly reclined. His hands were at the 10:00 and 2:00 position on the steering wheel, his elbows were locked straight, and his eyes remained fixed on the road in front of him, never turning to look in her direction. After the vehicle passed, Sergeant Arnold exited the crossover to run a registration check of the license plate. Initially, there did not appear to be a passenger in the vehicle, but as Sergeant Arnold drove up alongside it, she observed that the seat was reclined and the passenger was in the lying-down position.

{¶ 4} As the officers continued to observe the vehicle, it drifted into the far right lane, over the dotted divider line, then back into the middle lane, without the driver activating his turn signal. Sergeant Arnold initiated a traffic stop near milepost 65.

{¶ 5} Sergeant Arnold exited her vehicle and waved for the driver to do the same. They approached one another and Sergeant Arnold explained why she pulled him over. She asked if he was tired or whether he had been drinking. He said that he was tired because he and his passenger, his cousin, had been driving since 5:00 a.m., returning to

2.

Philadelphia after visiting cousins in Chicago. Sergeant Arnold could see that his carotid artery was pulsing and his face was twitching, both of which she recognized as signs of nervousness.

{¶ 6} Sergeant Arnold asked the driver for his license. He presented her with a Pennsylvania license bearing the name Sheirque Konneh, but he did not resemble the photograph on the license. She asked if the license, in fact, was his, and he insisted that it was. Sergeant Arnold placed him in the back of her cruiser, then approached the passenger side of the vehicle. She observed a strong odor of cologne emanating from the vehicle and saw a cologne bottle on the passenger's lap. Agent Damshen told her that he saw the passenger spray the cologne.

{¶ 7} Sergeant Arnold ultimately learned that the driver was Francois Beavogui and the passenger was Sheirque Konneh. Konneh said that Beavogui believed his license was suspended, so he gave Beavogui his license to present to the officer. Sergeant Arnold also learned that the Kia Optima had been rented by Konneh; Beavogui was not listed as an additional driver on the rental agreement. The paperwork showed that the rental expired on July 28, 2016, however, Konneh claimed that he had extended the rental.

{¶ 8} Sergeant Arnold and the two border control agents were soon joined by Trooper Ryan Stewart and his K-9, Oso, who had just completed a traffic stop in the vicinity and stopped to make sure that everything was okay. Sergeant Arnold asked Trooper Stewart to walk Oso around the vehicle. She asked Konneh to exit the vehicle,

3.

and when he did so, the trunk inadvertently popped open.  Sergeant Arnold saw a jug in the trunk that resembled the type of container that would hold antifreeze or weed killer, completely encased in gray duct tape.  She closed the trunk.

{¶ 9} The K-9 circled the vehicle and alerted to its rear corner.  Sergeant Arnold observed what appeared to be marijuana residue on the floorboard.  She pulled the vehicle further off the side of the road so that a probable cause search could be conducted.

{¶ 10} The officers searched both the interior and the trunk of the vehicle.  They found several hundred-dollar bills in the driver's side door, which Beavogui said were his.  There was a briefcase, a black Diesel bag, and some additional bags. There was also a cardboard box filled with black, currency-sized paper, some of which was wrapped in saran wrap.  There were a number of other items in the box, including bleach tablets, surgical masks, deodorizer, dryer sheets, plastic bags, packing tape, Elmer's glue, black dye, rubber bands, rubber gloves, dishwasher tablets, saran wrap, envelopes, gray duct tape, scissors, plastic bags, aluminum foil, and iodine.  There was white residue in the box.

{¶ 11} Sergeant Arnold asked Konneh and Beavogui to identify which bags were theirs.  Konneh claimed ownership of the briefcase, and Beavogui claimed ownership of the black Diesel bag.  Inside the black Diesel bag was a toiletry bag that contained a box cutter, a black light, and a bottle of liquid.  Also inside the bag were plastic bags filled with black paper like that found in the box.  It too had a white residue on it.  Inside the briefcase there was a book with four individual sheets of white paper in it.

4.

{¶ 12} Other items in the trunk included chlorine tablets, paper towels, and glass vials with liquid in them. There was additional black paper and white paper cut into the size of U.S. currency. In all, more than 18 pounds of black, currency-sized paper were found in the vehicle.

{¶ 13} The duct-tape-wrapped jug that Sergeant Arnold saw when the trunk inadvertently popped open was more closely examined. In fact, it was two jugs taped together. The top of the second jug was cut off and the bottom was taped directly beneath the first jug. With the duct tape encasing both of them, it created what appeared to be one long jug with two bottoms. The jug smelled of bleach and chlorine.

{¶ 14} The cash found in the driver's side door was also more closely examined. The security strips on the bills were green; they should have been blue. In addition to that, it was discovered that by shining a black light on the white paper found in the book in the briefcase, a perfect imprint of a $100 bill appeared.

{¶ 15} The officers were not sure what to make of what they had found, but they suspected a currency-related crime. Trooper Stewart contacted the U.S. Secret Service, the agency responsible for investigating currency-related crimes, and spoke to Agent Steve Snyder. He and his supervisor met them at the Bowling Green station.

{¶ 16} The Secret Service believed that Beavogui and Konneh were involved in a scheme known as a "black money" or "wash-wash" scam. According to Special Agent Snyder, in a black money scam, the perpetrator will generally obtain a large amount of black paper cut to the same size as U.S. currency. He will try to convince a victim that the

5.

paper is actually currency that was dyed black to avoid detection in customs, and with a special chemical, the dye can be washed off to reveal negotiable currency. Agent Snyder explained that the jug, like the one found in the trunk of the Kia, is used as a prop in this scheme, and usually through some sleight of hand, the perpetrator will demonstrate how the money can be "washed" with the chemical. The perpetrator tells his victim that he has only a small supply of the chemical, and he convinces the victim that if he or she gives him money to buy more chemicals, he will share the currency with the victim.

{¶ 17} Beavogui and Konneh were arrested. On August 10, 2016, they were charged in the Perrysburg Municipal Court with forgery, a violation of R.C. 2913.31(A)(3) and (C)(1)(b), and possessing criminal tools, a violation of R.C. 2923.24(A). A preliminary hearing took place on August 18, 2016. The municipal court found probable cause as to the possession-of-criminal-tools charge, but not as to the forgery charge. The case was bound over to the Wood County Court of Common Pleas and presented to the grand jury.

{¶ 18} On September 8, 2016, Beavogui was indicted on one count of forgery in Wood County case No. 2016 CR 0399. On October 20, 2016, he was indicted on one count of possessing criminal tools in Wood County case No. 2016 CR 0512. The trial court joined the two cases at the state's request on November 2, 2016, over Beavogui's objection. The case was scheduled for jury trial beginning November 21, 2016, but was continued to December 12, 2016, due to a death in the family of the assistant prosecutor.

6.

The jury convicted Beavogui of both counts, and the court sentenced him to a jail term of 180 days on each count, to be served concurrently.

{¶ 19} Konneh was indicted on the same charges on the same dates as Beavogui. And as it did in Beavogui's case, the trial court joined the two cases. Konneh's case was tried to a jury on November 14, 2016. He too was convicted of both charges and sentenced to a jail term of 180 days on each count, to be served concurrently. He appealed. In a decision released on March 30, 2018, we reversed Konneh's conviction for possession of criminal tools due to violation of his speedy-trial rights, but we affirmed his forgery conviction. *State v. Konneh*, 6th Dist. Wood No. WD-17-007, 2018-Ohio-1239.

{¶ 20} We now consider Beavogui's appeal. He assigns the following errors for our review:

I. The trial court committed prejudicial error in failing to dismiss Appellant's indictment for a violation of R.C. 2945.71.

II. The trial court erred in denying Appellant's Crim.R. 29 motion.

III. The jury's verdict was against the manifest weight of the evidence presented at trial.

## II.  Law and Analysis

{¶ 21} Like Konneh, Beavogui argues that his speedy-trial rights were violated. He also argues that the trial court erred in denying his motion for judgment of acquittal and that the jury's verdict was against the manifest weight of the evidence.

7.

{¶ 22} As previously indicated, we decided Konneh's appeal on March 30, 2018. *Konneh*, 6th Dist. Wood No. WD-17-007, 2018-Ohio-1239. After our decision was released, Beavogui and the state filed a joint notice of supplemental authority, acknowledging our ruling in *Konneh*, and conceding that that decision "appears to be dispositive, as it relates to [Beavogui's] two assignments of error."

{¶ 23} We first observe that Beavogui has assigned three—not two—errors for our review. And while Beavogui and Konneh's charges arise from the same circumstances, their appeals do not present identical issues. Having said that, we will apply *Konneh* as appropriate.

{¶ 24} But before addressing Beavogui's assignments of error, we briefly address—as we did in *Konneh*—a preliminary issue raised by the state. Specifically, the state claims that Beavogui's appeal is moot because Beavogui has completed his sentence and will suffer no collateral disability or loss of civil rights as a result of his conviction. The state urges that Beavogui, a foreign national who has permanent resident status in the United States, already cannot hold public office, serve on a jury, or vote. Thus, the state claims, he will not suffer a collateral disability as a result of his felony convictions, and his appeal is moot. The state maintains that any collateral disability is "theoretical" and "not something concrete."

{¶ 25} In support of its position, the state cites *State v. Wilson*, 41 Ohio St.2d 236, 238, 325 N.E.2d 236 (1975), which held that "where a defendant has voluntarily paid a fine in satisfaction of a judgment, evidence must be offered from which an inference can

8.

be drawn that he suffers some collateral disability apart from the sentence * * * in order for the defendant to have a right of appeal." The Ohio Supreme Court clarified in *State v. Golston*, 71 Ohio St.3d 224, 226-228, 643 N.E.2d 109 (1994), however, that *Wilson* applies only where the appellant has been convicted of a misdemeanor. It held:

> Given the numerous adverse collateral consequences imposed upon convicted felons, it is clear to us that a person convicted of a felony has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment imposed upon him or her. Therefore, an appeal challenging a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal. The collateral legal consequences associated with a felony conviction are severe and obvious. Thus, a convicted felon, who has completed his or her sentence during the pendency of an appeal from the felony conviction, need not present evidence that he or she will suffer some collateral legal disability or loss of civil rights in order to maintain the appeal. In this regard, we specifically disapprove of [*State v.*] *Williams, supra*, 80 Ohio App.3d 542, 609 N.E.2d 1307 [1992], which improperly extended the rule of *Wilson* and [*State v.*] *Berndt*[, 29 Ohio St.3d 3, 504 N.E.2d 712 (1987)] to cases involving appeals from felony convictions. *Id.* at 227.

{¶ 26} Accordingly, as we did in *Konneh*, we reject the state's position that Beavogui's appeal is moot, and we proceed to consider his assignments of error.

9.

## A. Speedy Trial

{¶ 27} Beavogui was charged with forgery and possession of criminal tools, both fifth-degree felonies. Under R.C. 2945.71(C)(2), the state was required to bring Beavogui to trial on these charges within 270 days of his arrest. Beavogui remained in custody from the time of his August 9, 2016 arrest until his trial on December 12, 2016, therefore, each day he was held counted as three days for purposes of the speedy-trial statute. R.C. 2945.71(E). He moved the court on the day of trial to dismiss the charges against him for violation of his right to a speedy trial. In his first assignment of error, Beavogui argues that the trial court erred in denying his motion.

{¶ 28} "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. * * * If a defendant demonstrates that his or her speedy-trial right has been violated, he or she may seek dismissal of the criminal charges." *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 10, citing R.C. 2945.73. R.C. 2945.71 sets forth the time within which a defendant must be brought to trial. "A person against whom a charge of felony is pending * * * shall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2).

{¶ 29} There are circumstances, however, where a person's speedy-trial time may be waived or the period tolled. *Id.* at ¶ 11, citing R.C. 2945.72; *State v. King*, 70 Ohio St.3d 158, 637 N.E.2d 903 (2004). Under R.C. 2945.72(E), for instance, a defendant's demand for discovery will toll the speedy-trial time, as will any period of delay

necessitated by reason of a motion made by the defendant. R.C. 2945.72(E); *State v. Vrapi*, 10th Dist. Franklin No. 11AP-700, 2012-Ohio-1018, ¶ 7, 9. Speedy-trial time may also be tolled for "[t]he period of * * * any reasonable continuance granted other than upon the accused's own motion," including at the state's request. R.C. 2945.72(H); *State v. Williamson*, 5th Dist. Licking No. 2005 CA 00046, 2005-Ohio-6198, ¶ 32, citing *State v. Saffell*, 35 Ohio St.3d 90, 91, 518 N.E.2d 934 (1988).

{¶ 30} "We review a speedy trial case by independently calculating when the time to bring a defendant to trial expires." *Vrapi* at ¶ 9. If the defendant makes a prima facie showing that his speedy-trial rights were violated, the burden shifts to the state to show that the speedy-trial time limit was extended for one or more reasons set forth in R.C. 2945.72. *State v. Covington*, 6th Dist. Lucas No. L-97-1196, 1999 Ohio App. LEXIS 6021, *6 (Dec. 17, 1999).

{¶ 31} Here, Beavogui was tried 113 days after his arrest and was in custody in the Wood County Justice Center ("WCJC") while awaiting trial[1]—triggering the three-for-one provision of R.C. 2945.71(E). He has made a prima facie showing that his speedy-trial rights were violated. We must, therefore, determine whether any of the reasons specified

---

[1] The state's brief indicates that Beavogui was released from custody on August 18, 2016, and apprehended on a bench warrant on September 16, 2016. But the bindover papers dated August 18, 2016, indicate that "bail has not been given," and commanded the sheriff to "hold defendant until discharged," and the return on the warrant on indictment states that Beavogui was served in the WCJC on September 9, 2016. We, therefore, proceed under the assumption that Beavogui remained in custody continuously between August 9, 2016, and December 12, 2016.

11.

in R.C. 2945.72 operated to extend the deadline for bringing Beavogui to trial. In doing so, we consider the following timeline of events:

- August 9, 2016: Beavogui was arrested.

- August 10, 2016: Beavogui was charged in Perrysburg municipal court with forgery and possession of criminal tools, appeared in court, and requested a French interpreter.

- August 11, 2016: Beavogui's preliminary hearing was continued at his request until August 18, 2016, so that an interpreter could be present for the proceedings.

- August 18, 2016: After finding no probable cause as to the forgery charge, the municipal court ordered that the case be bound over to the Wood County common pleas court.

- September 8, 2016: Beavogui was indicted on the forgery charge in case No. 2016 CR 0399.

- September 18, 2016: Beavogui made a demand for discovery in case No. 2016 CR 0399.

- September 23, 2016: The state responded to the demand for discovery in case No. 2016 CR 0399.

- October 20, 2016: Beavogui was indicted on the possession-of-criminal-tools charge in case No. 2016 CR 0512.

12.

- October 24, 2016: Beavogui filed a motion to suppress in case No. 2016 CR 0399.

- November 2, 2016: The court journalized an order granting the state's motion to join case Nos. 2016 CR 0399 and 2016 CR 0512 over Beavogui's objection.

- November 10, 2016: The court denied Beavogui's motion to suppress.

- November 14, 2016: Beavogui filed a request for funds for an interpreter.

- November 17, 2016: The trial court denied Beavogui's request for funds for an interpreter.

- November 21, 2016: An order was journalized indicating that over Beavogui's objection and at the request of the state, the trial date was being continued to December 12, 2016, due to a death in the family of the assistant prosecutor.

- December 12, 2016: Beavogui filed a motion to dismiss for violation of his right to a speedy trial.[2]

---

[2] The state, apparently aware that the motion was forthcoming, filed its opposition three days before the motion was filed.

{¶ 32} Beavogui agrees that the period of August 11-18, 2016, was tolled because of the continuance necessitated by his request for an interpreter. He also agrees that time was tolled for the period of October 24-November 10, 2016, during the pendency of his motion to suppress. He points out, however, that no request for discovery appears on the docket, so he denies that any time was tolled due to any discovery request. He also questions whether the November 14, 2016, request for the appropriation of funds for an interpreter constitutes a tolling event. But the main issue to be resolved for purposes of calculating the speedy-trial deadline here is the effect of the continuance granted by the trial court to allow the assistant prosecutor to travel out of the country following the death of his family member.

{¶ 33} As we recognized earlier, speedy-trial time may be tolled for "[t]he period of * * * any reasonable continuance granted other than upon the accused's own motion," including at the state's request. R.C. 2945.72(H). Reasonableness is determined by examining the purpose and length of the continuance, which must be affirmatively demonstrated by the record. *State v. Strauss*, 11th Dist. Portage No. 2010-P-0035, 2011-Ohio-869, ¶ 13; *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 34. An order granting a continuance at the state's request must be journalized before the expiration of the time limits set forth in R.C. 2945.71. *State v. Mincy*, 2 Ohio St.3d 6, 441 N.E.2d 571 (1982), syllabus.

{¶ 34} Here, the order continuing the trial date, journalized on November 21, 2016, provided the purpose and length of the continuance. It stated that the assistant prosecuting

14.

attorney "has had to leave the country upon notification of the death of an immediate family member." We find that the purpose for the continuance was reasonable. *See Williamson*, 5th Dist. Licking No. 2005 CA 00046, 2005-Ohio-6198, at ¶ 50 (Hoffman, J., concurring) (agreeing with majority that time was properly tolled because of the death of the prosecuting attorney's family member); *see City of Medina v. Kemper*, 9th Dist. Medina C.A. No. 777, 1978 Ohio App. LEXIS 7864, *2-3 (May 17, 1978) (finding that there was "no question" that death in citing officer's family was a "valid and allowable" reason for continuance, but finding that length of continuance was not reasonable).

{¶ 35} The November 21, 2016 order also provided a new trial date of December 12-13, 2016. We find that the length of the continuance—approximately three weeks—was also reasonable. *Compare Kemper* at *3 (finding length of continuance unreasonable where defendant was required to be tried within 30 days, continuance was requested two days before trial, and trial court continued trial date an additional 28 days—almost as long as the original statutory time). Accordingly, we find that the period of November 21-December 12, 2016 was tolled under R.C. 2945.71(H).

{¶ 36} Turning to our calculation, we find that the following days should have been counted for speedy trial purposes:

> August—14 days (August 18-31)
>
> September—25 days (September 1-17, September 23-30)
>
> October—23 days (October 1-23)

15.

November—9 days (November 10-13, November 17-21)

December—0 days

Total: 71 x 3 = 213 days

{¶ 37} Even assuming that the period of delay resulting from the discovery request and the period that Beavogui's request for funds for an interpreter was pending were not tolling events, the total number of days still would total only 240 (80 days x 3).

{¶ 38} We recognize that we found a speedy-trial violation in *Konneh*, 6th Dist. Wood No. WD-17-007, 2018-Ohio-1239, as to the possession-of-criminal-tools conviction, so for purposes of clarity—and given the parties' joint notice of supplemental authority—we explain why we reach a different outcome here. Like Beavogui, Konneh filed a motion to suppress evidence in the forgery case. But Konneh filed his motion on October 17, 2016, before the state indicted him for possession of criminal tools. On appeal, Konneh argued that the motion to suppress filed in the first case could not properly be held to toll the speedy-trial clock in the second case because (1) no indictment had yet been issued at the time the motion was filed, and (2) the cases were joined over his objection. We agreed that the motion did not toll time as to the yet-unfiled case. We held that "Konneh made the tactical decision to file a motion to suppress in case No. 2016 CR 0400 before he was indicted for possession of criminal tools in case No. 2016 CR 0514. That motion, therefore, did not operate to toll the time for bringing him to trial on the

possession-of-criminal-tools charge." *Konneh*, 6th Dist. Wood No. WD-17-007, 2018-Ohio-1239, at ¶ 44.

{¶ 39} Here, Beavogui filed his motion to suppress on October 24. 2016—*after* he was indicted for possession of criminal tools. Moreover, unlike Konneh, Beavogui does not argue on appeal that the delay caused by the filing of his motion to suppress did not toll time in both cases. There is no question, therefore, that the speedy-trial clock was tolled pending the trial court's resolution of Beavogui's motion to suppress.

{¶ 40} We find Beavogui's first assignment of error not well-taken.

### B. Beavogui's Crim.R. 29 Motion and Manifest Weight

{¶ 41} In his second assignment of error, Beavogui argues that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal. In his third assignment of error, he claims that the jury's verdict was against the manifest weight of the evidence.

{¶ 42} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 43} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could

17.

have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 44} R.C. 2913.31(A)(3) provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." R.C. 2923.24(A) provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 45} Beavogui challenges only the "possession" element of the offenses. He argues that the state presented no forensic evidence to show that he had any contact with the items found in the vehicle. And he insists that the state presented no evidence (1) that he knew that the black paper—or the white paper found in Konneh's briefcase—were in the vehicle, (2) that he was in possession of the paper, or (3) that his actions aided in the commission of the charged offenses.

{¶ 46} The state maintains that it presented evidence that Beavogui constructively possessed the items found in the trunk. It submits that "a majority of appellate districts have held that constructive possession occurs when items are discovered in trunks of vehicles that defendants are present in." It points out that Beavogui was driving the vehicle that contained the forgeries and criminal tools, thus making him complicit in the

18.

crime.  And it emphasizes that Beavogui admitted owning the bags in which a number of the items were found.

{¶ 47} Constructive possession occurs when a person "'knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'"  *In re Israel D.*, 6th Dist. Sandusky No. S-95-024, 1996 Ohio App. LEXIS 2493, *10-11 (June 21, 1996), quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982).  While close proximity to contraband alone is insufficient to prove constructive possession, it can be used as circumstantial evidence of constructive possession.  *Id.,* citing *State v. Chapman*, 73 Ohio App.3d 132, 138, 596 N.E.2d 612 (3d Dist.1992).

{¶ 48} Ohio courts have held that two or more persons may have joint constructive possession of a particular item.  *State v. McCallister*, 4th Dist. Scioto No. 13CA3558, 2014-Ohio-2041, ¶ 31.  "Joint possession exists when two or more persons together have the ability to control an object, exclusive of others."  (Citations omitted.)  *State v. Gilbert*, 9th Dist. Medina No. 11CA0076-M, 2012-Ohio-4090, ¶ 11.

{¶ 49} "Constructive possession of contraband may be inferred from 'the surrounding facts and circumstances, including the defendant's actions.'"  *State v. Washington*, 6th Dist. Ottawa No. OT-12-032, 2014-Ohio-1008, ¶ 31, quoting *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, 922 N.E.2d 248, ¶ 28 (10th Dist).  For instance, "furtive movements in an automobile may provide sufficient indicia of dominion or control over contraband, allowing an inference of constructive possession."  *State v.*

*Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 20, quoting *State v. Riggs*, 4th Dist. Washington No. 98CA39, 1999 Ohio App. LEXIS 4327, *5 (Sept. 13, 1999). Moreover, the presence of a "vast amount" of contraband in a car may support an inference that the appellant knew about the presence of the contraband and that he exercised control over the items along with others in the vehicle. *McCallister* at ¶ 37.

{¶ 50} Here, the state presented evidence that Beavogui was driving the vehicle and admitted to owning one of the bags in which evidence was found. We find that this evidence, together with Sergeant Arnold's testimony that she observed signs of Beavogui's nervousness when she pulled over the vehicle, supports the state's constructive-possession theory and was sufficient to support Beavogui's convictions.

{¶ 51} Beavogui also argues that the jury's verdict was against the manifest weight of the evidence. When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."

20.

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 52} Beavogui testified at trial. He said that he and Konneh are "remote" cousins. They met for the first time in Philadelphia in 2015. They drove to Chicago together, but Beavogui insisted that they did not stay together once they got there. He said that Konneh called him on Monday (August 8, 2016) to say that he would be picking him up the next morning to return to Philadelphia. He came by that night to pick up Beavogui's luggage—a black Diesel bag and a black suitcase—so they could leave early the next morning to avoid traffic. Beavogui said that when he put his bags in the trunk, he saw a cardboard box, but did not look to see what was in it. He also denied that the toiletry bag containing the black paper, flashlight, and chemicals had been in his bag when he placed it in the trunk. He maintained that when Konneh picked him up the next morning, he did not look inside the trunk.

{¶ 53} Beavogui said they left Chicago at 6:00 a.m., and Konneh drove until approximately 30 minutes before they were pulled over. He confirmed that the bags he identified to the officers belonged to him, but said that the evidence found inside them did not. He admitted that the $450 found in the driver-side door was his, but he said that he did not realize that the money was discolored—he said that he got the money from the bank and "received it as such." He denied any involvement in criminal activity. To the extent that any of his testimony was inconsistent with what he told Sergeant Arnold, Beavogui insisted that it was due to his poor command of the English language.

21.

**{¶ 54}** Similar to his sufficiency challenge, Beavogui argues that the state did not prove that he possessed the items in the trunk or that he was even aware that the items were in the trunk. He suggests that because his bags were out of his control over night, Konneh had opportunity to place the items in his bags. He also emphasizes that he did not rent the vehicle, he drove the vehicle for only a short period of time, and the state did not present forensic evidence linking him to the evidence.

**{¶ 55}** Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

**{¶ 56}** Certainly, Beavogui offered an alternate scenario for how the evidence appeared in his black Diesel bag. But the verdict demonstrates that the jury chose to believe the state's evidence over Beavogui's testimony. We find no error in its resolution of the credibility issues here, and we cannot say that its verdict was against the manifest weight of the evidence.

**{¶ 57}** Accordingly, we find Beavogui's second and third assignments of error not well-taken.

22.

### III. Conclusion

**{¶ 58}** We find that a reasonable continuance of the trial date was granted under R.C. 2945.72(H) due to a death in the family of the assistant prosecutor, thus the speedy-trial time was tolled for 21 days and Beavogui's speedy-trial rights were not violated.

**{¶ 59}** Where Beavogui exhibited nervousness, was driving the vehicle, and admitted ownership of bags in which evidence was found, the evidence was sufficient to sustain his convictions and the verdict was not against the manifest weight of the evidence.

**{¶ 60}** We, therefore, find Beavogui's three assignments of error not well-taken, and we affirm the February 2, 2017 judgment of the Wood County Court of Common Pleas.  The costs of this appeal are assessed to Beavogui under App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.               

James D. Jensen, J.          

Christine E. Mayle, P.J.        
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.