[Cite as *State v. Smith*, 2018-Ohio-3175.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 17CA0017 |
| | : | |
| DALTON G. SMITH | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Holmes County
                             Municipal Court, case nos. 17-CRB-123;
                             17-CRB-167; 17-CRB-183; 17-CRB-208


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      August 8, 2018


APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

MATTHEW J. MUZIC                       WARNER MENDENHALL
Asst. Prosecutor, Holmes Co.           190 North Union St., Ste. 201
164 E. Jackson St.                     Akron, OH 44304
Millersburg, OH 44654

*Delaney, J.*

{¶1}   Appellant Dalton G. Smith appeals from the August 23, 2017 Judgment Entry of the Holmes County Municipal Court.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   The following facts are adduced from the record of the bond revocation hearing on July 11, 2017 and the bench trial of August 3, 2017.

{¶3}   Appellant was age 87 at the time of these offenses. He met the victim, Jane Doe, when she volunteered at a church where he was the minister.  The two have never had a romantic relationship and Doe does not want a romantic relationship with appellant. Doe has told appellant many times, in person, by telephone, and in writing, that she does not want a relationship with him and that she wants him to stop contacting her.

{¶4}   Doe's friends and family, including, e.g., a tenant and Doe's brother, have encountered appellant on the family's property and told him to stay away from Doe.  The Holmes County Sheriff's Department has responded to complaints by Doe and deputies have told appellant not to contact her.

{¶5}   Nevertheless, by his own admissions, appellant continued to call Doe on the telephone and to show up at her home and her parents' home.

*17CRB123: Criminal Trespass*

{¶6}   On April 4, 2017, appellant was charged by criminal complaint with one count of criminal trespass pursuant to R.C. 2911.21(A)(1), a misdemeanor of the fourth degree.  The complaint alleges that on or about April 2, 2017, appellant did without privilege to do so knowingly enter or remain upon the land or premises of Jane Doe.  Jane

Doe signed a motion for temporary protection order in this case.[1]  Appellant was released upon posting bond in the amount of $1000.00.  No contact with Jane Doe was listed a condition of bond.

{¶7}   Appellant appeared in court on April 5, 2017 and requested a continuance to speak to an attorney.

{¶8}   On April 10, 2017, attorney Jensen Silvis entered a notice of appearance as counsel for appellant and filed a discovery demand.

{¶9}   On April 12, 2017, appellant filed a demand for jury trial.  On the same day, counsel filed a motion to withdraw as counsel stating appellant wished to proceed pro se.  The motion to withdraw was granted on April 17, 2017.

{¶10} On April 19, 2017, appellant moved for a continuance "to talk to an attorney."  The entry further states, "Plea date is set for Tuesday, April 25, 2017 at 10:30 a.m.  Bond is continued."

{¶11} On April 25, 2017, appellant moved for another continuance to talk to an attorney.  The entry further states, "Plea date is set for Wed. May 17, 2017 at 10:30 a.m.  Bond is continued."

{¶12} On May 10, 2017, attorney M. Baserman Jr. filed a notice of appearance and written plea of not guilty, along with a demand for discovery.

{¶13} On May 11, 2017, appellee responded to the demand for discovery.

{¶14} On May 12, 2017, appellee filed a motion to modify appellant's bond, moving the trial court to add a condition of bond that appellant is not to come within 500

---

[1] There is no indication in the record that a temporary protection order was granted.  As discussed infra, there was a no-contact order on the bond.

feet of Jane Doe or her property.  The motion alleged appellant "spent four hours on May 10, 2017 waiting at the edge of [Jane Doe's] property, and she is in fear of him."

*17CRB167:  Criminal Trespass*

{¶15} On May 15, 2017, appellant was charged by criminal complaint with one count of criminal trespass pursuant to R.C. 2911.21(A)(1), a misdemeanor of the fourth degree.  The complaint alleges that on or about May 14, 2017, appellant did without privilege to do so knowingly enter or remain upon the land or premises of Jane Doe.  The affidavit in support of the complaint stated appellant entered or remained on Doe's property despite having been told not to return and despite the no-contact order on the bond in the first trespass case.

{¶16} Appellant posted a surety bond in the amount of $1000.00 and was released upon the condition that he have no contact with Jane Doe.

{¶17} On May 17, 2017, the trial court granted appellee's request and added the bond condition as stated.  The trial court also scheduled a pretrial in case numbers 17CRB123 and 17CRB167 for June 30, 2017.[2]

{¶18} On June 8, 2017, appellee filed a motion to revoke appellant's bond.  The motion alleges that between April 24, 2017 and June 1, 2017, appellant contacted Doe numerous times.  Attached to the motion is a narrative report of the Holmes County Sheriff's Department dated June 6, 2017 stating appellant called her personal phone and her business phone numerous times despite the no-contact order.  (Doe's business line automatically transfers to her personal cell phone.)  Doe stated that on April 26, 2017, she texted appellant and asked him to stop to contacting her.

---

[2] Eventually all four cases (including the two counts discussed infra) were consolidated.

{¶19} Also on June 8, 2017, appellee filed a demand for specific discovery for a letter allegedly written from Jane Doe to appellant.

{¶20} On June 12, 2017, appellant moved for a bond revocation hearing.

*17CRB183: Telephone Harassment*

{¶21} Also on June 12, 2017, appellant was charged by criminal complaint with one count of telephone harassment pursuant to R.C. 2917.21(A)(5), a misdemeanor of the first degree. The complaint states that appellant knowingly called Doe "on and between April 26, 2017 and June 1, 2017" after having been told not to call Doe. Appellant posted a $10,000 surety bond on June 27, 2017.

{¶22} On June 14, 2017, the trial court filed a Judgment Entry granting appellee's motion for bond revocation and ordering the issuance of a warrant for appellant's arrest. Also on June 14, by Judgment Entry, the trial court ordered a bond revocation hearing to be set for June 27, 2017, and that "[t]he warrant shall remain in place."

{¶23} On June 22, 2017, a Judgment Entry was filed stating "[b]ond is set at $10,000 cash or surety. No 10% allowed."

{¶24} On June 27, 2017, a Judgment Entry was filed stating the bond revocation hearing was continued to July 11, 2017 at the request of defense counsel. Also on that date, appellant posted a surety bond in the amount of $10,000.00.

{¶25} On July 6, 2017, appellee filed a motion for bond revocation alleging appellant violated the no-contact order twice on July 1, 2017; three times on July 4, 2017; and three times on July 6, 2017.

{¶26} On July 11, 2017, a bond revocation hearing was held before the trial court. Jane Doe testified at the hearing that appellant called her numerous times, even upon his

release from jail. She testified that she wants no contact with appellant and has told him that many times in person and otherwise. She testified she was caring for her parents, who were very ill, and she was not being coerced by anyone into telling appellant to stay away. Appellant testified on his own behalf and admitted calling Doe; he knew her parents were very ill and wanted to know "what was going on." He admitted that on Mother's Day, he drove by and stopped because he thought the family was likely to be celebrating the day together and his car trunk was filled with flowers for Doe. He admitted he didn't want to sign his bond because it required him not to have contact with Doe. When asked if he would obey the no-contact order if the bond was continued, appellant said no. Appellant testified he would honor Jane Doe's wishes if she didn't want to have contact with him but insisted she was being "forced" into that position. He admitted he would rather go to jail than have no contact with Doe.

{¶27} The same day as the hearing, the trial court filed a judgment entry under case numbers 17CRB123, 17CRB167, and 17CRB183, finding appellant did violate the no-contact order on the bond. The Judgment Entry further stated:

* * * *.

The Court specifically takes judicial notice that the Defendant is currently facing three different charges involving harassment or trespass against the alleged victim. The Court has repeated[ly] warned the Defendant not to have any contact with the alleged victim while this matter is pending. **The Defendant has repeatedly ignored the Court's warning and admitted to actually speaking with the Holmes County Probate Court staff prior to the hearing**

**today about obtaining a marriage license for himself and the alleged victim.** The Defendant does not believe that the alleged victim wants him to stay away from her, despite her repeated requests for him to leave her alone.

**This Court is extremely concerned for the safety of the alleged victim. The Defendant has made it clear that he believes that he and the alleged victim are supposed to be together despite the Court's order to stay away.**

**The Court has no other option available to protect this alleged victim.**

IT IS THEREFORE ORDERED, that the Defendant's bond be revoked and the Defendant's surety shall be released from their obligation in this matter and the Defendant shall be placed in custody by the Holmes County Sheriff. The Defendant shall remain incarcerated until his trial date of July 27, 2017 at 9:00 a.m.

* * * *. (Emphasis added).

{¶28} On July 12, 2017, appellant filed a withdrawal of his demand for jury trial.

{¶29} On July 13, 2017, the trial court set the matter for bench trial on July 27, 2017.

*17CRB208: Telephone Harassment*

{¶30} On July 17, 2017, appellant was charged by criminal complaint with one count of telephone harassment pursuant to R.C. 2917.21(A)(5), a misdemeanor of the

first degree. The affidavit in support of probable cause underlying the complaint states appellant called Jane Doe six times while out of jail on bond, on July 1st, 4th, and 8th.

{¶31} On July 18, 2017, defense trial counsel (Baserman) filed a motion to withdraw as retained counsel. Attached to the motion is a written message from appellant in jail to his attorney stating he was "dismissed" effective immediately.

{¶32} On July 19, 2017, the trial court journalized an entry stating appellant was found to be indigent and Attorney Baserman was appointed as counsel.

{¶33} On July 24, 2017, appellee moved to continue the July 27 bench trial because Jane Doe's father passed away and she would be unable to testify on the 27th.

{¶34} On July 25, 2017, the trial court granted appellee's motion to continue and rescheduled the bench trial for August 3, 2017.

{¶35} On July 28, 2017, appellant filed a motion to dismiss case number 17CRB123, the criminal trespass count, for violation of his right to a speedy trial.

{¶36} On August 3, 2017, the trial court overruled appellant's motion to dismiss.

{¶37} All four criminal cases proceeded to bench trial on August 3, 2017 and appellant was found guilty as charged. The trial court sentenced appellant to an aggregate jail term of one year, followed by a 3-year probation term conditioned upon, e.g., no contact with Jane Doe and a complete mental evaluation of appellant. The trial court's sentencing entry further notes:

> * * * *.
>
> It is the intent of this court to release the Defendant from the Holmes County Jail as soon as a mental health assessment and medications and/or counseling recommendations are in place. At

that point, the remaining term of the defendant's sentence shall be suspended and the recommendations of the mental health professional shall become a term of probation. Refusal to comply with any of the terms of the mental health treatment plan shall constitute a violation of probation.

* * * *.

{¶38} On September 8, 2017, the trial court filed a judgment entry ordering appellant's release from jail "at the earliest possible date," reiterating appellant's conditions of probation including electronic monitoring and no contact with Jane Doe. The remaining balance of the jail time was suspended.

{¶39} Appellant now appeals from the trial court's judgment entry of August 24, 2017.

{¶40} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶41} "I. THE JUDGE ERRED IN FINDING DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED IN CASE NO. 17CRB00123."

{¶42} "II. DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER THE CONFRONTATION CLAUSE WERE VIOLATED WHEN HIS VIEW OF THE STATE'S KEY WITNESS WAS BLOCKED ABSENT A FINDING OF NECESSITY."

{¶43} "III. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO HIS COUNSEL'S FAILURE TO INTRODUCE POTENTIALLY EXCULPATORY TESTIMONY AND EVIDENCE."

**ANALYSIS**

I.

{¶44} In his first assignment of error, appellant argues the trial court should have granted his motion to dismiss 17CRB123, one count of criminal trespass, due to violation of his right to a speedy trial.  We disagree.

{¶45} Speedy-trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd,* 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978).   "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state."  *State v. Pachay,* 64 Ohio St.2d 218, 416 N.E.2d 589, syllabus (1980).

{¶46} Our review of a trial court's decision regarding a motion to dismiss based upon a violation of the speedy-trial provisions involves a mixed question of law and fact. *State v. Larkin,* 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122, ¶ 11. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. *State v. Taylor*, 5th Dist. Richland No. 16 CA 17, 2016-Ohio-5912, ¶ 43, citing *Larkin*, supra.  With regard to the legal issues, however, we apply a *de novo* standard of review and thus freely review the trial court's application of the law to the facts. *Id.*

{¶47} Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred.

{¶48} When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against appellee. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶ 12.

{¶49} Appellant was arrested on April 2, 2017, and posted bond the same day. The day of arrest is not counted when computing the time within which a defendant must be brought to trial. *State v. Lautenslager*, 112 Ohio App.3d 108, 110, 677 N.E.2d 1263 (3rd Dist.1996); R.C. 2945.71; Crim.R. 45(A).  His bench trial commenced on August 3, 2017, or 123 days later.  R.C. 2945.71(B)(1) required appellant to be tried within 45 days after arrest or service of summons upon the first criminal charge of criminal trespass, a fourth-degree misdemeanor.  Between the date of his (first) arrest and the eventual trial, appellant spent some time in jail and some time out of jail.  If a person is held in jail in lieu of bond, then each day that the suspect is in custody counts as 3 days. R.C. 2945.71(E).

{¶50} The speedy-trial clock in the instant case was effectively tolled for several reasons.  Speedy-trial time requirements may be tolled by certain events listed in R.C. 2945.72, including "[a]ny period of delay necessitated by the accused's lack of counsel * * *," R.C. 2945.72(C), and "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused," R.C. 2945.72(E). R.C. 2945.72(H) further provides the time within which an accused must be brought to trial may be extended by the period of any continuance granted on the

accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

{¶51} Appellant was arrested on April 2, bonded out, and appeared in court on April 5. At his court date, appellant requested a continuance. This time period is assessed against appellee as **3 days**.

{¶52} Appellant concedes he or his counsel moved for continuances until July 11, 2017. On that date, the bond-revocation hearing was held, the trial court found appellant violated the no-contact order, and appellant was jailed. Time is tolled for the period from April 5 to July 11 because of continuances on appellant's own motion and periods of delay necessitated by his lack of counsel. We therefore assess no time against appellee for the time period from April 5 to July 11.

{¶53} Appellant's bench trial took place on August 3, 2017, 23 days later, a period during which appellant remained in jail. We agree with the trial court, though, that significant tolling events occurred during the period from July 11 to August 3.

{¶54} The first tolling event occurred when appellant's counsel filed a motion to withdraw on July 18.[3] The motion was resolved when counsel was appointed to represent

---

[3]     We note the record of the four underlying criminal cases is replete with letters from appellant in jail to the trial court. The trial court tolled time from appellant's pro-se request to fire his attorney, dated July 14, 2017. We do not count the pro se letter as a tolling event. *State v. Baugh*, 5th Dist. Tuscarawas No. 2017AP030007, 2018-Ohio-857, fn 9, citing *State v. Morgan*, 5th Dist. Ashland No. 17–COA–008, 2017–Ohio–9142, 91 N.E.3d 793, ¶ 51. A criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel, but those two rights are independent of each other and may not be asserted simultaneously. *Id.*, citing *State v. Martin*, 103 Ohio St.3d 385, 2004–Ohio–5471, 816 N.E.2d 227, ¶ 32, citing *Parren v. State*, 309 Md. 260, 269, 523 A.2d 597 (1987). We therefore find the letter to be inconsequential to the speedy-trial analysis. *Baugh*, supra.

appellant on July 19.  We count this period as **21 days**: 7 days from July 11 to July 18, times three.

{¶55} The next tolling event occurred on July 24, 2017, when appellee moved to continue the bench trial due to the death of Jane Doe's father.  We count the time period from July 19 to July 24 as **15 days**: 5 days from July 19 to July 24, times three.

{¶56} The bench trial had been scheduled for July 27, 2017.  On July 25, 2017, the trial court granted appellee's motion to continue and rescheduled the bench trial for August 3, 2017.  R.C. 2945.02 permits the trial court to extend speedy trial time as long as the length of time is reasonable and the reason for the continuance is indicated in the judgment entry. "[W]here the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof, such a continuance will be upheld." *State v. Myers,* 97 Ohio St.3d 335, 2002-Ohio-6658*,* ¶ 62.  The death of a family member of a party, counsel, or witness has been found to be a reasonable basis for a continuance. *State v. Beavogui*, 6th Dist. Wood No. WD-17-009, 2018-Ohio-2432, ¶ 34, citing *State v. Williamson*, 5th Dist. Licking No. 2005 CA 00046, 2005-Ohio-6198, ¶ 50 (Hoffman, J., concurring) [agreeing with majority that time properly tolled due to death of prosecutor's family member] and *City of Medina v. Kemper*, 9th Dist. Medina No. 777, 1978 WL 215191, *1 (May 17, 1978) [death in arresting officer's family was  "valid and allowable" reason for continuance, but length of continuance was unreasonable].

{¶57} In the instant case, the death of the father of the complaining witness created the basis for a necessary and reasonable continuance.  For the time period from July 24 to the date the motion was resolved, we count **3 days**.

{¶58} The continuance from July 27 to August 3 is a period of one week. To determine whether a delay is so excessive as to offend the federal constitutional right to a speedy trial, courts balance the following factors: (1) the length of the delay, (2) the reason for the delay, (3) whether and how the defendant asserted the right, and (4) whether prejudice to the defendant resulted. *Barker v. Wingo*, 407 U.S. 514, 530-533, 92 S.Ct.2182, 33L.Ed.2d 101 (1972); *State v. Taylor,* 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 38. Extending the trial to August 3 upon appellee's motion is not excessive.

{¶59} We find, therefore, that a total of 42 days may be assessed against appellee. Appellant was therefore tried within the 45-day time limit of R.C. 2945.71(B)(1).

{¶60} Appellant's first assignment of error is overruled.

II.

{¶61} In his second assignment of error, appellant argues the trial court violated his right to confront witnesses against him by blocking his view of Jane Doe while she testified. We disagree.

{¶62} We first note the record is sparse but indicates the bailiff blocked appellant's view of Jane Doe during her trial testimony by standing in front of Jane Doe. T. 25-26. Appellant did not object, although he complained to the trial court that he couldn't hear and the trial court explained Doe would speak into the microphone as she testified. There is no further evidence in the record that appellant could not hear Doe after her testimony began. Nor is there any documentation in the record of how long the "blocking" took place, or whether appellant was effectively prevented from viewing Doe as she testified.

{¶63} The Sixth Amendment to the United States Constitution provides, "[I]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the

witnesses against him." Section 10, Article I of the Ohio Constitution provides, "[T]he party accused shall be allowed * * * to meet the witnesses face to face * * *." Typically, this means that witnesses who testify against a defendant in a criminal proceeding must personally appear at the defendant's trial. *In re M.D.*, 5th Dist. Knox No. 2011-CA-9, 2012-Ohio-31, ¶ 91.

{¶64} As appellant acknowledges, however, the United States Supreme Court has held that a defendant's right to face-to-face confrontation is not absolute and may be appropriately limited under certain circumstances. In *Maryland v. Craig*, the Supreme Court explained that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case. 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The court further held that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where (1) the denial of such confrontation is necessary to further an important public policy, and only where (2) the reliability of the testimony is otherwise assured by the other elements of the confrontation right, "including testimony under oath, the opportunity for cross-examination, and the opportunity for the judge, jury, and the defendant to view the witness's demeanor as he or she testifies." *Id.*

{¶65} Confrontation Clause claims not preserved by objection are reviewed for plain error. *State v. Garrison*, 5th Dist. Muskingum No. CT2017-0034, 2018-Ohio-1048, ¶ 13, citing *State v. Hartman*, 2nd Dist. No. 26609, 2016–Ohio–2883, 64 N.E.3d 519, ¶ 83, appeal not allowed, 146 Ohio St.3d 1515, 2016–Ohio–7199, 60 N.E.3d 7, ¶ 83 (2016). The Ohio Supreme Court has recently clarified the standard of review for plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) Id. at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and

only to prevent a manifest miscarriage of justice.'" (Emphasis added.)

*Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d

91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92

N.E.3d 821, ¶ 32-34, reconsideration denied, 151 Ohio St.3d 1445,

2017-Ohio-8730, 87 N.E.3d 215.

{¶66} Jane Doe was sworn by the court, testified, and was subject to cross-examination before the finder of fact. The trial court was able to assess Doe's demeanor while she testified. There is no indication in the record that once Jane Doe testified using the microphone, appellant had any problem hearing her.

{¶67} Appellant argues a finding of necessity was required before the trial court could obstruct appellant's view of Jane Doe. The U.S. Supreme Court has recognized, "[W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce." *State v. Johnson*, 195 Ohio App.3d 59, 2011-Ohio-3143, 958 N.E.2d 977, ¶ 63 (1st Dist.), citing *Davis v. Washington*, 547 U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). We note that on pages 5-6 of the trial court's Judgment Entry of August 3 overruling the motion to dismiss, the trial court stated in pertinent part:

* * * *. This Court took into consideration everything that had

allegedly occurred to the victim over the course of these allegations.

As well as the fact that the victim was subpoenaed to testify in the

Bond Revocation hearing over her objections and was placed in the

courtroom with the Defendant who made several attempts to get

closer to the victim during the hearing. The victim has stated numerous times of her concern to be near the Defendant (*sic*), and the Defendant even admitted during said hearing that he had gone to the Holmes County Probate Court on the day of the hearing to investigate if he could get a marriage license for him and the alleged victim. This Court determined that forcing the alleged victim into court to testify again and miss funeral arrangements for her father, who only serve to victimize her further (*sic*). * * * *.

{¶68} On the limited record before us, we decline to find that appellant's right to confront witnesses was limited in any meaningful way because it is not evident to us, and appellant does not reveal, the effectiveness of "blocking" his view of Doe by putting the bailiff between them.

{¶69} Even if we assumed without deciding that blocking appellant's view of Doe was error, it was not "plain error." As stated previously, "plain error" exists only when it is clear the verdict would have been otherwise but for the error. *State v. Knauff*, 4th Dist. Adams No. 10CA900, 2011-Ohio-2725, ¶ 44, appeal not allowed, 129 Ohio St.3d 1507, 2011-Ohio-5358, 955 N.E.2d 388. We find no error and no violation of appellant's right to confront witnesses. Moreover, appellant has not demonstrated a reasonable probability the alleged error affected the outcome of the trial. If the bailiff had not obstructed appellant's view of Jane Doe, we are unable to conclude on this record the result of the proceeding would have been different. *State v. Garrison*, 5th Dist. Muskingum No. CT2017-0034, 2018-Ohio-1048, ¶ 18. We find no plain error in the trial court's decision permitting the bailiff to "block" appellant's view of Jane Doe.

{¶70} Appellant's second assignment of error is overruled.

III.

{¶71} In his third assignment of error, appellant argues he received ineffective assistance of defense trial counsel because appellant was the sole defense witness at trial and counsel did not use certain evidence at trial.  We disagree.

{¶72} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶73} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶74} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶75} Appellant argues defense trial counsel was ineffective in 1) failing to call three witnesses asked him to call, and 2) failing to "secure records from [appellant]'s phone showing calls from [Jane Doe]."   No proffer was made at any point in the proceedings.   No evidence therefore exists in the record of what the three witnesses would have testified to or whether such testimony would have been admissible, and there is no evidence that "records" of calls from Jane Doe exist.   We decline to evaluate this fact-specific issue on the trial record alone because evidence relevant to appellant's argument here was not developed. See, *State v. Sanders*, 5th Dist. No. 15-COA-33, 2016-Ohio-7204, 76 N.E.3d 468, ¶ 33, *appeal not allowed,* 148 Ohio St.3d 1445, 2017-Ohio-1427, 72 N.E.3d 658, citing *State v. Shepherd,* 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, 2015 WL 5917918, ¶ 41.

{¶76} Moreover, appellant's summary argument does not reveal how any such evidence would have changed the outcome of the proceeding in light of his admissions to the harassing conduct.   We decline to find counsel was ineffective because appellant has failed to demonstrate actual prejudice.  *See, State v. Shuster*, 5th Dist. Morgan No. 13AP0001, 2014-Ohio-3486, ¶ 64 [declining to speculate on outcome if counsel had properly called expert witness].

{¶77} We also must presume a properly-licensed attorney executes his or her duties in an ethical and competent manner. *Sanders*, supra, 2016-Ohio-7204 at ¶ 34, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Under the circumstances presented, we are not inclined to overcome this presumption with the limited information in the appellate record before us.  *Id.*

{¶78} Appellant's third assignment of error is overruled.

**CONCLUSION**

{¶79} Appellant's three assignments of error are overruled and the judgment of the Holmes County Municipal Court is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.